445 So.2d 1280 (1984)
Charles SCHEPP, Plaintiff-Appellant,
v.
OLIN CORPORATION, Defendant-Appellee,
Bechtel, Inc., and Industrial Indemnity Insurance Company, Intervenors-Appellants.
No. 83-309.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
Rehearing Denied February 29, 1984.
Writs Denied April 13, 1984.
*1281 Raleigh Newman, Lake Charles, for plaintiff-appellant.
Scofield, Bergstedt & Gerard, J. Michael Veron, Lake Charles, for defendant-appellee.
Plauche, Smith & Nieset, Michael J. McNulty, III, Lake Charles, for intervenor-appellee-appellant.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOMENGEAUX, Judge.
This appeal involves two cases which were consolidated at trial and remain as such on appeal, and evolve from an alleged accident which occurred on April 19, 1979. In case, La.App., 445 So.2d 1286, plaintiff sued his employer Bechtel, Inc. and its workers' compensation carrier, Industrial Indemnity Insurance Company, for workers' compensation benefits. In this case, No. 83-309, appellant Charles Schepp filed suit against Olin Corporation in tort, based upon strict liability for conducting an ultrahazardous activity. Mr. Schepp's employer, Bechtel, Inc., and its workers' compensation carrier, Industrial Indemnity Insurance Company, intervened to recover the workers' compensation benefits which were paid to plaintiff, in the event of Schepp's success in the tort case. Intervenors allege that if Schepp was entitled to recover from Olin, then Bechtel and Industrial Indemnity were entitled to recover with preference and priority any compensation benefits previously paid; and were entitled to a credit for any future *1282 compensation benefits to the extent of any award.
The two cases were consolidated for trial; the tort case was tried before a jury, the workers' compensation suit and intervention was a bench trial. After a bifurcated trial on the merits, the jury determined that Olin Corporation was not liable and therefore denied recovery to plaintiff. Schepp was ordered to pay two-thirds of the costs of the tort proceeding; Bechtel and Industrial were ordered to pay one-third of the costs (which included the expert witness fees). The trial judge ruled that Schepp was entitled to receive workers' compensation benefits plus legal interest, for an accidental injury which he sustained in the course and scope of his employment. Bechtel and Industrial were ordered to pay all costs in the compensation proceeding, but plaintiff was denied penalties and attorney's fees.
Schepp, Bechtel, and Industrial Indemnity appealed from the jury verdict rendered in favor of Olin Corporation in the tort suit. In their appeal Bechtel and Industrial Indemnity also seek a reduction in court costs. Schepp devolutively appealed from the workers' compensation judgment, seeking penalties and attorney's fees which the trial judge denied. Bechtel and Industrial Indemnity answered that appeal, alleging that no work accident disability had been proven. We will consider both cases herein, but will render a separate opinion in, La.App., 445 So.2d 1286.

FACTS
On April 19, 1979, plaintiff was employed as a material expediter by Bechtel. As a material expediter, his duties consisted of securing and supplying materials as needed by the other Bechtel workers. He was assigned to a construction project at the Olin Corporation plant west of Lake Charles. The construction site within the Olin plant was located near the TDI[1] complex.
Mr. Schepp testified at trial that while retrieving a certain type of pipe in the "lay down" (supply) yard, he bent down and then felt a "jolt." He stated that he felt weak, his eyes and lungs began to burn. He stated that he started to gag and could not catch his breath. He further testified that he passed out; when he regained consciousness he crawled to a warehouse and then went to the Bechtel first aid station where he received help. The safety representative for Bechtel, Kirby E. White, Jr., called a nurse for Mr. Schepp. Mary Lou Goodwin, a registered nurse who was employed by Olin in the medical department at the time of the incident, came to Mr. Schepp's aid. He complained of numbness and shortness of breath; his blood pressure reading was extremely high. Mr. White then telephoned for an ambulance which brought Mr. Schepp to the emergency room at St. Patrick's Hospital in Lake Charles.
Dr. Fritz Lacour examined him and determined that he was suffering from a pulmonary problem. Doctor Lacour assumed Mr. Schepp's illness was caused by an inhalation of a toxic substance. Mr. Schepp was treated at the hospital and released several days later.
In his written reasons for judgment on the worker's compensation claim, the trial judge relied upon the testimony of three physicians who have examined and treated Mr. Schepp during the past four years. The trial judge concluded that Mr. Schepp:
"is suffering from a severe asthmatic condition which causes shortness of breath and wheezing sounds in his chest and that there are marked obstructive defects in his lungs. The physical condition of the claimant can not be cured medically and he is effectively prevented from following his usual occupation, or in fact, any other reasonable gainful occupation."
The trial judge applied the provisions of the workers' compensation statutes and rendered judgment for Mr. Schepp, finding *1283 him partially disabled and therefore entitled to receive weekly compensation of 66 2/3 per cent of the difference between the wages he was earning at the time of the injury and any lesser wages earned in any week of gainful occupation for wages, for a period of 450 weeks. The defendants were to receive credit for payments already made at the time of trial. The judgment also included reimbursement for medical expenses incurred by Mr. Schepp.[2] Costs were assessed against defendants; legal interest on past due installments was to accrue from the due date until paid.
Mr. Schepp claimed that the actions of the defendants, Bechtel and Industrial Indemnity, were arbitrary and capricious in the non-payment of his workers' compensation benefits. However, the trial judge determined that the defendants' actions were not without probable cause because the case involved questions of liability and responsibility. Therefore, penalties and attorney's fees were denied.
The jury verdict held that Olin Corporation, in its plant operation, was not the cause of Mr. Schepp's accident. In response to submitted interrogatories, the trial jury unanimously found that the plaintiff was not "injured as a result of a chemical or gas exposure at the Olin Corporation plant on April 19, 1979."

ISSUES
Appellant Schepp alleges that the trial judge erred in denying penalties and attorney's fees for the workers' compensation judgment against Bechtel and Industrial Indemnity.
Mr. Schepp further alleges that the jury verdict in the case against Olin Corporation is manifestly erroneous.
Bechtel and Industrial Indemnity allege the tort suit judgment directly conflicts with the workers' compensation judgment. The appellants further allege that the conclusions of the trial judge and jury should be reconciled and that the decision of the jury should be reversed, entitling appellants to recover on their petition of intervention. Bechtel and Industrial Indemnity argue that the court costs which were assessed against them (1/3 for the tort proceeding and all costs for the workers' compensation proceeding) were imposed erroneously and should be reduced.

WORKERS' COMPENSATION
The trial judge was correct in his finding that the medical testimony established that appellant Schepp is suffering from a severe lung ailment. The trial judge was also correct in finding that Mr. Schepp's pulmonary problem was a result of an injury sustained while in the course and scope of his employment. Guidry v. Serigny, 378 So.2d 938 (La.1979), on remand, 385 So.2d 295 (La.App. 1st Cir. 1980), writ denied, 386 So.2d 355 (La.1980). Mr. Schepp's unexpected and unforeseen condition was produced suddenly and violently on April 19, 1979, with objective signs of injury. The requirements of La. R.S. 23:1021 and La.R.S. 23:1031 therefore were fulfilled. Self v. Riverside Companies, Inc., 382 So.2d 1037 (La.App. 2nd Cir.1980), writ denied, 385 So.2d 793 (La. 1980).
In our review of the record, the evidence supports a finding that Mr. Schepp was disabled due to a severe pulmonary condition. Since he sustained a compensable work injury he is entitled to workers' compensation benefits. However, due to the substantial question of liability at issue, the trial judge found that Bechtel and Industrial Indemnity were justified with regard to discontinuing compensation payments. LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir.1977), writ denied, 351 So.2d 174 (La.1977). Therefore, we find that the trial court properly rejected the employee's demand for statutory penalties and attorney's fees in the workers' compensation proceeding.
*1284 We further find that the trial court did not err in rendering the judgment taxing costs (including expert witness fees fixed in the judgment) against the employer and its compensation insurer in this proceeding. Cullivan v. Fish Engineering & Construction Company, Inc., 354 So.2d 597 (La.App. 3rd Cir.1977), writ not considered, 355 So.2d 254 (La.1978); Credeur v. McManus, 175 So.2d 863 (La.App. 3rd Cir.1965). La.R.S. 23:1317 provides that:
"[c]osts may be awarded by the court in its discretion ...." There has been no abuse of that discretion and the judgment will not be disturbed on appeal. White v. E.A. Caldwell Contractors, Inc., 276 So.2d 762 (La.App. 3rd Cir.1973).

LIABILITY
La.C.C. Art. 2317 sets forth the standard governing the imposition of an absolute duty to discover the risks presented by things in one's custody.[3] Plaintiff claims that Olin Corporation failed to take adequate precautions in preventing a gas or chemical leak from its TDI plant, and that its negligent operation of the process plant caused his injury. The trial jury specifically concluded that Mr. Schepp was not injured by a chemical or gas exposure.
Fritz Lacour, M.D., was the plaintiff's physician and the first medical doctor to examine plaintiff on April 19, 1979. Doctor Lacour qualified as an expert in general and industrial medicine. He testified, under direct examination, that Mr. Schepp's condition was attributable to gas exposure. However, Doctor Lacour admitted, under cross-examination, that Mr. Schepp had suffered symptoms (including shortness of breath and chest pains) since 1977, when Doctor Lacour began treating him for a variety of pulmonary disorders.
In November, 1980, Mr. Schepp sought the advice of a pulmonary specialist. Jana Kaimal, M.D., diagnosed Mr. Schepp's pulmonary complaints as asthma. Doctor Kaimal treated Mr. Schepp over a period of time; treatment included hospitalization for testing and diagnosis and also for high blood pressure. Doctor Kaimal testified that asthma is a somewhat common allergic disorder and can be the result of an almost infinite number of causes.
At defendant's request, Mr. Schepp was examined by Hans Weill, M.D., another pulmonary specialist, associated with Tulane University Medical Center. In his deposition submitted into evidence, Doctor Weill stated that the plaintiff's chief symptoms, i.e., wheezing, raling, and shortness of breath, strongly indicated an asthmatic condition which pre-existed the date of the alleged exposure to gas.
Additionally, testimony given by Bechtel's safety representative, Kirby E. White, Jr., indicates that Mr. Schepp's symptoms were more consistent with a heart attack rather than exposure to a lethal gas. Mr. White testified that Mr. Schepp's principal complaints were shortness of breath and numbness in his arm. Mr. White stated that the usual symptoms of exposure to lethal gas were not complained of by Mr. Schepp at the time of the alleged incident, i.e., teary, blurring, red eyes; skin irritations, and vomiting.
Further testimony corroborated Mr. White's statement. When Mr. Schepp arrived at St. Patrick's Hospital, he reported to the emergency room nurse that he had experienced chest pains just two days before.
Further testimony was rendered by the operations superintendent at the time of the alleged incident, John T. Griffing, who explained the plant records extant on the day of April 19, 1979. The records contained operator's logs and gas release logs which document accidental releases of gas or chemical occurring at the plant. Mr. Griffing stated that the record did not contain every incident of an accidental leak, but that the logs attempted to report such incidents with as much detail and accuracy as possible.
*1285 The jury heard many hours of testimony, studied documentary evidence, and decided that Mr. Schepp was not exposed to any lethal gas or chemical on April 19, 1979.
Olin Corporation is engaged in the manufacture of chemicals, in particular phosgene gas (made from Carbon monoxide and chlorine), used at the process plant in the production of urethane foams and coatings.
"Liability for ultrahazardous activities * * * involves different considerations than liability under C.C. Art. 2317 for creating or maintaining a thing which presents an unreasonable risk of harm. There are some activities in which the risk may be altogether reasonable and still high enough that the party ought not undertake the activity without assuming the consequences. Such activities include pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes, and the like, in which the activity can cause injury to others, even when conducted with the greatest prudence and care. 2 F. Harper and F. James, The Law of Torts, § 14.4 (1956); W. Prosser, The Law of Torts § 78 (4th ed. 1971).
For these particular activities, Louisiana courts have imposed an absolute liability (as contrasted to the strict liability previously discussed), which virtually makes the enterpriser an insurer. The enterpriser, whether or not negligent in any respect, causes the damage, and the injured party recovers simply by proving damage and causation.
In these cases of absolute liability (or liability without proof of negligence or other fault), liability is imposed as a matter of policy when harm results from the risks inherent in the nature of the activity. The steps taken by the enterpriser to protect others from the inherent risks of the activity are not relevant to the determination of liability."
Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982).
Absolute liability will not be imposed when the injured party fails to establish that the risks inherent in the nature of processing lethal chemicals resulted in the harm complained of. The jury concluded that plaintiff did not sustain his burden of proving damage and causation. Therefore, no liability was imposed on the enterpriser. Kent v. Gulf States Utilities Company, at 498.
Our duty as an appellate court has been set forth in Canter v. Koehring Company, 283 So.2d 716 (La.1973). The Supreme Court announced:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
At 724.
In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), the Court explained its previous language and elaborated on the standard to be followed by intermediate appellate courts.
"That standard requires that this Court not disturb the factual findings of the trial court (whether judge or jury) in the absence of manifest error. We also understand that our duty is to review the entire record to determine if there is manifest error in the ultimate conclusion reached by the trial court.
`Therefore, the appellate review of fact is not completed by reading so much of the record as will reveal a *1286 reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (Manifestly erroneous).' Arceneaux v. Domingue, id. at p. 1334.
We will not substitute our own evaluations or preferences for that of the fact trier unless those of the fact trier are clearly wrong."
Molenaar v. McGill Manufacturing Company, Inc., 410 So.2d 869, 871-872 (La.App. 4th Cir.1982). We find no error in the trial court's determination. The trial court committed no error in dismissing plaintiff's suit against Olin Corporation, nor did it err in assessing costs against plaintiff and intervenors, proportionately.

DECREE
For the above and foregoing reasons, the judgment of the trial judge and the judgment of the trial jury are affirmed.
Appellate costs in this case are assessed one-half (½) to Charles Schepp and one-half (½) to Bechtel and Industrial Indemnity.
AFFIRMED.
NOTES
[1] TDI is an abbreviation of toluene diisocyanate, the major ingredient for the manufacture of urethane pumps, which is produced by Olin Corporation. Phosgene gas is the reactant that is combined with the organic component of TDI.
[2] The parties stipulated that Bechtel and Industrial Indemnity were to be credited $1,974.00 for compensation payments made. The parties also stipulated that plaintiff incurred medical bills which amounted to $3,957.69.
[3] La.C.C. Art. 2317 provides in pertinent part:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. * * * *"