WILLIAMS, Judge.
This is an appeal from a decision of the trial court finding defendant Bon Marche Homes, Inc., [“Bon Marche”] liable to plaintiff Jimco, Inc. for $15,910.16.
Jimco sued Bon Marche on open account for concrete that was delivered by plaintiff. Bon Marche reconvened alleging that the delivery of the concrete was sporadic and behind schedule which caused structural *313 problems [cold joints] to develop in the slabs of the building defendant was constructing. William F. Schenker, Jr., owner and developer of the property, intervened asserting that the value of the property was diminished because of the questionable structural integrity of the building. The court below held that cold joints had developed in the slab, but were of such a nature that the building was not affected. Because there was no compromise of the building’s structural integrity, the trial judge also held that Schenker was not entitled to damages. It is from this decision that defendant and intervenor appeal asserting three errors below: (1) the ruling of the trial court finding that the building was unaffected by the cold joints in the slab is unsupported by the evidence; (2) the trial court’s refusal to allow Schenker to assert damages because he proceeded with the project although he knew that the cold joints would affect the value of the complex; and (3) the amount of expert witness fees awarded to James Houston, a witness for Jimco, was excessive.
I.EFFECT OF COLD JOINTS
Jimco and Bon Marche presented expert testimony as to whether the slab was structurally sound, and whether the structural integrity of the entire building was adversely affected. There appears to be no question that cold joints had developed in the slab. Plaintiff’s expert witnesses testified, however, that any problem caused by the cold joints was so minimal that it fell within the accepted standard deviation. The trial court obviously found the testimony of the plaintiff’s witnesses to be more persuasive.
We have reviewed all of the testimony presented at trial and can find no abuse of discretion on the part of the trial court in its determination that the slab was sound. See Jones v. Malone Freight Lines Inc., 425 So.2d 932 (La.App. 4th Cir.1983); Landry v. Schwegmann, 416 So.2d 341 (La.App. 4th Cir.1982).
II. INTERVENOR’S CLAIM
William Schenker, the intervenor was not allowed to present his claim for damages. Schenker alleges that the trial court refused to allow him to do so because he had elected to build on the slab and, therefore, had forfeited his right to damages. Schenker asserts that the presence of the cold joints resulted in a 15% dimunition in the resale value of the property.
The trial court found that because the structure of the slab is sound and unaffected by the cold joints, there should be no decrease in value of the property. We find no error in the lower court’s ruling.
We need not decide whether the trial court was in error in refusing to allow the intervenor opportunity to present evidence of diminished value, because based upon the evidence presented at trial is sufficient for this court to make a determination of the merits of Schenker’s claims. See Gonzales v. Xerox Corp., 320 So.2d 163 (La. 1975).
We note that one of defendant’s witnesses testified that there would be a dimunition in resale value of the property. This witness, however, based his findings on information about the exact nature and effect of the cold joints in the slab supplied to him by one of defendant’s expert witnesses, whose testimony was reasonably rejected by the trial court.
III. EXPERT WITNESS FEES
Appellants assert that the trial court erred in awarding fees for the testimony of Dr. James Houston because he was actually an employee of Jimco and that the amount awarded was clearly excessive.
At the hearing on this matter, Houston testified that he spends the majority of his time working as a consultant for Jimco, but does spend a substantial amount of time doing consulting work for others. The trial court held that Houston was not a regular employee of Jimco, and, therefore, entitled to expert witness fees.
*314 Plaintiff had asked for expert fees of $4,747.50 and $1,148.00 in expenses. The trial court awarded all of the expenses requested and $2,500.00 in fees. The determination of the fee to be paid on expert witness is within the discretion of the trial court. E.g. Oshinski v. Central Nat. Ins. Co. of Omaha, 432 So.2d 929 (La.App. 4th Cir.1983); see La.R.S. 13:3666. Based upon the evidence presented at the hearing to set expert witness fees, the trial court did not abuse its discretion in making this award.
For the foregoing reasons, the decision of the trial court is affirmed.
AFFIRMED.
LOBRANO, J., concurs in part and dissents in part.